IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br><br><br>vs.<br><br><br><br>JOHN ROMAN,<br><br>   Defendant. | MEMORANDUM DECISION ON DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND  RECOMMENDATION RE: 2/10/04 SEARCH AND ORDER DENYING  MOTION TO SUPPRESS<br><br><br><br><br><br>Case No. 2:04-CR-544 TS |

This matter is before the court on Defendant's Objection to the Magistrate Judge's Report & Recommendation Re: 2/10/04 Search.

I.  PROCEDURAL BACKGROUND

The Court referred Defendant's Motion to Suppress to Magistrate Judge Nuffer to conduct proceedings and issue a report and recommendation.  28 U.S.C. § 636(b)(1)(B). Following an evidentiary hearing and briefing, the Magistrate Judge entered his Report & Recommendation Re: 2/10/05 Search, finding that Defendant was not in custody, there

was no *Miranda* violation, his statements were voluntary, and he did not have standing to contest an alleged violation of his wife's *Miranda* rights. Accordingly, the Magistrate Judge recommended a denial of Defendant's Motion to Suppress the fruits of a search of his residence as well as the statements made by Defendant and his wife. Defendant filed a timely Objection to the Report and Recommendation.

## II.  STANDARD OF REVIEW

Section 636(b)(1)(B) provides the standard for review:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(B).

> De novo review is required after a party makes timely written objections to a magistrate's report. The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations. Where circumstances indicate the district court did not conduct de novo review, the case must be remanded. *In re Griego,* 64 F.3d 580, 583-84 (10th Cir. 1995). However, the district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo review is sufficient. *Griego,* 64 F.3d at 583-84.

*Northington v. Marin,* 102 F.3d 1564, 1570 (10th Cir. 1996) (citations partially omitted).

> In order to conduct a *de novo* review a court "should make an independent determination of the issues . . .; [it] 'is not to give any special weight to the [prior] determination'. . .." *United States v. First City Nat. Bank,* 386 U.S. 361, 368 (1967). "The district judge is free to follow [a magistrate's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Mathews v. Weber,* 423 U.S. 261, 271 (1976).

*Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988).

Defendant objects to the Report and Recommendation's findings that he was not in custody, that his statements were voluntary, and that the "plain view" exception applies. Defendant also clarifies that his position is that his wife's statements should be suppressed on the basis of his own due process right not to have the allegedly coerced and false statements of a witness admitted at his trial. Defendant also incorporates arguments made in his earlier memorandum submitted to the Magistrate. Defendant has not requested any further evidentiary proceedings. The government relies on the evidentiary record, its earlier memorandum, and the Report and Recommendation.

### III.  DE NOVO REVIEW

The Court has made an independent determination of the issues raised by the Motion to Suppress. In so doing, it has conducted a de novo review of the Motion, the transcript of the March 2, 2005 evidentiary hearing, the earlier memoranda, the Report and Recommendation, the Defendant's Objection, his Memorandum in Support of his Objection and has conducted its own review of the law.

1. *Miranda*

Defendant objects to the Magistrate's findings that he was not in custody or detained in his home during the encounter and that the officers were in Defendant's home with his permission throughout the encounter. Upon de novo review of the transcript, the Court agrees with those findings and finds that the Magistrate accurately summarized the

evidence in his comprehensive findings of facts. Accordingly, it is not necessary to repeat those findings herein except as necessary to discuss the Court's ruling.

Although Defendant argues it is not credible that he would invite the officers into his home and "blurt out confession after confession to officer after officer," that is, in fact, an entirely accurate summary of the testimony at the evidentiary hearing. Briefly, the evidence showed that Defendant himself summoned the officers to his home with complaints that "people" had left unknown chemicals in his carport. When the officers arrived, he invited them into his home, offered unsolicited statements and complaints about various crimes he believed the "people" had committed at his home, including forging identification papers and cooking meth on his porch, and invited officers to his basement and elsewhere to see evidence of their crimes. When the initial officers summoned narcotics officers to investigate the chemicals, Defendant first told them he suspected that the chemicals would be used for a meth lab but later said that he suspected the chemicals would be used for forgery. Throughout the encounter Defendant readily agreed when officers responded to his various statements by asking if they could look around his yard and his house. One of the officers asked him about drug use and he said he used meth. The officers saw firearms in plain sight in the basement and in the bedroom and drug paraphernalia in the bedroom. Because he was the complaining witness who had summoned them, the officers did not initially consider Defendant to be a suspect or take him into custody. Instead, for about an hour and a half, they concentrated on trying to

identify the chemicals and the circumstances surrounding their presence in Defendant's carport.

However, when Defendant eventually told an officer that he had used a handgun to force a person involved in the drug trade to leave the house, the officer acted to detain Defendant and secure the weapons. Another officer gave Defendant a *Miranda* warning. Upon waiving his *Miranda* rights, Defendant was questioned about his drug use, the guns and his statement that he had pointed a gun at a person involved in drug dealing. The post-*Miranda* questioning lasted approximately 30 minutes.

Contrary to Defendant's arguments, the Court finds that a de novo review of the evidence establishes no support for the position that Defendant was detained or in custody up until the time he was given his *Miranda* rights. Therefore, there was not violation of his *Miranda* rights.

    2.    Voluntariness

Defendant contends that the Magistrate Judge erred by not suppressing his pre-*Miranda* warning statements on the basis that they were not voluntary, by failing to place the burden of establishing voluntariness on the government, and by failing to find that the statements were not voluntary due to the coercive length of the search, the custodial nature of the interrogation, and the coercive nature of the event.

Upon de novo review, the Court finds that Defendant's statements were voluntary. The Magistrate Judge applied the correct case law and burden of proof. The Court finds

that the Magistrate Judge did not improperly place the burden of proving voluntariness upon Defendant.

Upon de novo review of the factors[1] to be taken into account in determining whether a defendant's will was overborne and, therefore, his statements were involuntary, the Court finds that none of them support Defendant's position that his statements were not voluntary. The record shows that the length of the entire encounter was driven first by the need to determine what the situation was, and second to determine what the chemicals were and what agency, if any, should provide assistance. It is hardly surprising that a call for police assistance by a homeowner because he was fearful of the unknown chemicals "dropped off" at his home would lead law enforcement officers to a suspicion of a methamphetamine laboratory. Nor is it remarkable that the officers called to the scene of such a complaint would intend to remain on the scene until they finished an investigation of the complaint, including ascertaining if there was a methamphetamine lab to be cleaned up, especially where the complaining homeowner eventually volunteered statements that the people who allegedly left the chemicals were dangerous, were involved in crimes like forging and stealing, and had recently cooked meth at his home.

Under the totality of these circumstances, the fact that the investigation initially took about an hour and a half and also involved numerous officers from different units eventually summoned to the scene, does not make this incident coercive. Similarly, the totality of the circumstances show that the continuing presence of the various officers in

---

[1] *See U.S. v. Gonzales*, 164 F.3d 1285, 1291 (10th Cir. 1999) (listing factors).

Defendant's home was with his consent up until he was detained and given a *Miranda* warning.  Thereafter, he waived his *Miranda* rights and voluntarily spoke further with the officers.

       3.     Search of Defendant's House and Seizure of the Firearms

Defendant contends that the Magistrate Judge erred in applying the "plain view" exception to the seizure of the firearms from his downstairs because at the time the officer saw them in plain view in the basement, there was no reason to suspect Defendant of a crime.

The record is uncontested as follows.  On two occasions during the incident, Defendant asked two different officers to accompany him downstairs to view what he claimed was evidence of criminal activity left at his house by "people."  When downstairs, both officers saw several firearms lying around in plain view.  Before Defendant took the second officer, Officer Lynes, downstairs, he told him that "people" had cooked meth on his back patio.  Officer Lynes asked Defendant if he used meth and Defendant admitted to meth use a week earlier.  When Defendant returned upstairs with Officer Lynes, Defendant stated that "people" had dropped things off at his house.  He readily agreed to Officer Lynes' request to look around to see what had been dropped off.  Eventually, they looked in Defendant's bedroom where Officer Lynes saw drug paraphernalia and a .25 caliber handgun.  Although the exact sequence is not clear, sometime during the walk around, Defendant told the officer that he had used the handgun to point at people to get them to leave the house.  Officer Lynes, considering that information together with having

seen the drug paraphanelia and the handgun in the bedroom, decided Defendant was a suspect, and detained him. Officer Lynes did not question him further, but asked another officer to *Mirandize* and question Defendant while Officer Lynes seized the various weapons he had just seen during the walkthrough. Officer Lynes testified that he seized the weapons due to safety concerns after Defendant admitted pointing the gun at a person to force them to leave during an earlier incident.

The Magistrate Judge found that the incriminating nature of the firearms in the home of an admitted user of illegal drugs was immediately apparent and therefore the seizure was lawful under the plain view exception to the warrant requirement. *See U.S. v. Thomas,* 372 F.3d 1173, 1178 (10th Cir. 2004) (Under the plain view doctrine, police officers may properly seize evidence of a crime if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object."). This Court agrees based upon a de novo review of the evidence.

    4.    Statements of Defendant's Wife

In his Objection, Defendant clarifies that his position is that his wife's statements should be suppressed on the basis of his own due process right not to have a witness' allegedly coerced and false statements admitted against him at his trial.

The Tenth Circuit has noted that the "standard for determining whether a statement was voluntary is the same whether we are dealing with a defendant or a third-party witness." *U.S. v. Gonzales,* 164 F.3d 1285, 1291 (10th Cir. 1999).

> Obviously, defendants cannot seek to vindicate any violations of the subject witness' Fifth Amendment rights. *See Clanton v. Cooper,* 129 F.3d 1147, 1158 (10th Cir. 1997). Instead, defendants must point to violations of their own constitutional rights. *Id.* Although defendants' rights were in no way affected by [the] obtaining [of] the subject witness' statements . . . subsequent use of those statements could potentially implicate defendants' due process rights. *See Clanton,* 129 F.3d at 1158. More specifically, defendants' due process rights would be implicated if the subject witness was coerced into making *false* statements and those statements were admitted against defendants at trial. *Id.* We therefore proceed to determine whether, as concluded by the district court, the subject witness' statements were coerced.

* * *

> A statement "is involuntary if the government's conduct cause[d] the [witness'] will to be overborne and 'his capacity for self-determination critically impaired.'" *United States v. McCullah,* 76 F.3d 1087, 1100 (10th Cir. 1996) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225-26 (1973)). In determining whether a statement was freely and voluntarily given, the courts consider the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. 279, 285-86 (1991). The relevant circumstances embrace "both the characteristics of the accused and the details of the interrogation." *Schneckloth,* 412 U.S. at 226; *Lucero v. Kerby,* 133 F.3d 1299, 1311 (10th Cir. 1998). Relevant factors include the suspect's age, intelligence, and education, the length of detention and questioning, the use or threat of physical punishment, whether *Miranda* warnings were given, the accused's physical and mental characteristics, the location of the interrogation, and the conduct of the police officers. *Lucero,* 133 F.3d at 1311.

* * *

> Because we conclude the witness' statements were voluntary, there is no presumption that those statements were false or otherwise unreliable. Accordingly, we find no indication that defendants' due process rights will be

> affected by admission of the witness' statements, or by the witness testifying, at trial.

*Gonzales*, 164 F.3d at 1289 (italics in original).

The Magistrate Judge did not address whether Defendant's wife's statements were voluntary because it appeared that Defendant was only asserting that her *Miranda* rights were violated. However, the Magistrate Judge did make several findings regarding the questioning of Ms. Roman. Report and Recommendation at 2-5.

The following facts are relevant to the issue of the voluntariness of Ms. Roman's statements. Two officers initially responded to Defendant's request for police assistance. After discussing the situation with Defendant on the front porch, one of the officers asked him to complete a witness statement. Defendant invited the officer into his home and he and his wife both completed witness statements at the officer's request. At the time Ms. Roman filled out the statement, she appeared to be very concerned about the chemicals. She and her husband were in their own kitchen with the officer during the ten minutes it took to write out their statements. Defendant's wife was not a suspect and was acting as a witnesses.

After the officer read the statements, the officer asked Ms. Roman if she had anything to add and Defendant's wife responded. The conversation with the officer took about ten minutes after the written statements were completed and was conducted in the kitchen or adjoining living room area. Defendant's wife was not apprehensive to talk to the officer. The officer did not give her a *Miranda* warning because she was not a suspect. Her statements did not change the focus of the investigation, which was the chemicals in

the carport. She was free to stop the conversation or leave at any time during the questioning. The officer subsequently stayed in the home to assist the other officers until they left.

Considering the relevant factors, the Court finds that the written statement was voluntary. Considering the relevant factors for the subsequent oral statements, Defendant's wife was not detained. She was questioned very briefly, in her own home, in a room where the officer had been invited to enter, and was not apprehensive about talking to the officer. She was free to leave or to stop the conversation at any time. There were no threats or coercion. There was no *Miranda* warning. The Court finds that her statements to the officer after her written statement were voluntary. Because the statements "were voluntary, there is no presumption that those statements were false or otherwise unreliable." *Gonzalez,* 164 F.3d at 1289. Therefore, Defendant has not shown they should be suppressed as violative of his due process rights.

## IV.  CONCLUSION

Upon de novo review, the Court finds and concludes on the totality of the circumstances that Defendant's and Defendant's wife's statements were voluntary and that the seizure of the firearms was lawful under the plain view doctrine. Accordingly, it is therefore

ORDERED that the Magistrate Judge's June 15, 2005 Report and Recommendation Re: 2/10/04 Search [Docket No. 82] is ADOPTED IN FULL.  It is further

ORDERED that Defendant's Motion to Suppress Evidence [Docket No. 15], is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of a scheduling and status conference is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED September 26, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge